UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:18-CR-58-REW-HAI |
| ) | |
| v. ) | RECOMMENDED DISPOSTION |
| ) | |
| NATHAN EUGENE WAGONER, ) | |
| ) | |
| Defendant. ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant Nathan Eugene Wagoner, through counsel, has filed a motion to suppress. D.E. 12. Wagoner seeks "to suppress all evidence seized as a result of the search of the premises located at 7887 Barbourville Road, London, Kentucky, on October 26, 2017." D.E. 12 at 1. Through his motion, Wagoner argues that the search warrant and search were invalid due to a defective property description. *Id.* However, because the description of the premises to be searched was sufficient, and because no reasonable probability existed that a mistaken location would be searched, Wagoner's arguments fail. Thus, the undersigned recommends that Wagoner's motion to suppress be **DENIED**.

I.

On November 8, 2018, an indictment was returned charging Wagoner with one count of distributing a mixture or substance containing a detectable amount of methamphetamine and one count of possessing with the intent to distribute fifty grams or more of methamphetamine. D.E. 1 at 1–2. On November 13, Wagoner appeared before the Court for his initial appearance and

arraignment, and he pled not guilty. D.E. 7. His trial has been continued generally, pending resolution of his motion to suppress. D.E. 16.

That motion was filed on December 31, see D.E. 12, and has been referred to the undersigned for a recommended disposition, see D.E. 5. After reviewing the government's response, the Court conducted a scheduling conference to set an evidentiary hearing on Wagoner's motion. *See* D.E. 19. During that conference, the United States assumed the burden of proof to establish the validity of the warrant and search at issue. *Id.*

The evidentiary hearing on Wagoner's motion was held on January 24, 2019. D.E. 21. At that hearing, the United States called Detective Richard Dalrymple to testify.[1] D.E. 20. Defense counsel called Wagoner to testify.[2] *See id.* The testimony of both witnesses will be discussed in further detail below.

II.

According to a copy of the search warrant attached to the government's response, the warrant authorized the search of "the residence of Nathan Wagner[3] 7881 Barbourville Rd., London, KY and all outbuildings and appurtenances on the prop[]erty." D.E. 15-1 at 1. An attachment to the warrant "more particularly described" the location to be searched as follows:

> From the junction of KY HWY 229 and U.S. 25 in London, travel south on KY HWY 229 approximately 7.8 miles to the last lane on the right before Benge's market. Follow the one lane gravel drive to the end, approximately 1/10 mile to beige siding mobile with blue shutters home with an attached covered front porch and an attached back porch sitting to the right of a white metal building.

---

[1] Dalrymple is a detective with the Laurel County Sheriff's Office assigned to the Drug Enforcement Administration task force. *See* D.E. 20.
[2] Before Wagoner testified, the Court informed him of his right to remain silent and found that he voluntarily, knowingly, and intelligently waived his right against self-incrimination, and that he was competent to do so. *See* D.E. 21; *see Colorado v. Spring*, 479 U.S. 564, 572 (1987).
[3] This appears to be a typographical error as Defendant's last name is spelled "Wagoner." *See* D.E. 7 at 1 ("Defendant states true name is as it appears on the indictment.").

*Id.* at 3.  Det. Dalrymple was the affiant in support of the application for the search warrant.  *See id.* at 1.

At the evidentiary hearing, Det. Dalrymple discussed the manner and method by which he obtained the search warrant on October 26, 2017.  He said that law enforcement officers were executing an arrest warrant on Wagoner.  Det. Dalrymple said that the officers knew Wagoner was at the mobile home that was ultimately searched because a confidential informant told them that Wagoner was at that location about an hour and a half prior to the officers' arrival.  Once the officers were inside the mobile home, they found Wagoner, and they also observed evidence of illegal drugs.  Law enforcement used that information, as well as information previously obtained regarding Wagoner,[4] to apply for a search warrant for the mobile home.  Several officers remained at the mobile home while Det. Dalrymple left the scene to obtain the search warrant.

Although no facts are actually in dispute, the evidence at the hearing focused upon the layout and use of several buildings near the mobile home.  Det. Dalrymple described multiple structures as being off the same lane, including a house, a garage with an apartment, a white metal outbuilding, and the double-wide trailer that was searched.  He said that no street numbers are visible on any of the structures.  He further said that several mailboxes stand at the beginning of the lane, but it is impossible to tell which street address shown on each mailbox corresponds with the individual structures.  Det. Dalrymple said he was told by another law enforcement officer on site that the address of the mobile home was "7881 Barbourville Road."

Det. Dalrymple admitted that the description of the property to be searched was defective in one respect: the color of the mobile home. He acknowledged that the attachment to the

---

[4] Det. Dalrymple testified that, a little more than a month before the search at issue, officers had used a cooperating witness to perform a controlled buy from Wagoner at the mobile home that was searched.  *See* D.E. 15 at 2; D.E. 15-1 at 11.

3

warrant says the structure had "beige siding," but that upon recent inspection, the mobile home is actually light blue. He explained the mobile home had only been seen at night and looked beige, but that in daylight, it is light blue. Finally, he testified that he does not know whether the property that was searched was 7881 or 7887 Barbourville Road.

Wagoner's testimony does not differ in any material respects from Det. Dalrymple. For instance, he similarly described multiple buildings as being located off the same lane. Notably, Wagoner also stated that none of the buildings have a visible street number. Rather, the mailboxes for the individual buildings are located at the beginning of the lane. Wagoner said that the mobile home that was searched is his sister's property and that, at the time, he lived in an apartment in one of the other buildings off the same lane. He said the address of the apartment where he was living is 7881 Barbourville Road, not 7887 as stated in the warrant's property description.[5] Wagoner testified that he was on house arrest at the time of the search.

Additionally, Wagoner testified that a metal outbuilding is at the end of the lane, and the double-wide mobile home that was searched sits to the right of the outbuilding. He said all of the buildings have attached front and back porches, but that none of them have blue shutters. Wagoner said the double-wide trailer is gray, but the house and apartment are beige. He further said the double-wide's address is 7887 Barbourville Road, that no one was living there on the night of the search, and that he paid the electric bill for that property. He said the officers did not listen to him when he tried to tell them that the double-wide was not his residence.

The testimony of both witnesses indicates there were four defects in the property description. First, Wagoner claims the street number of the mobile home is 7887 instead of 7881 as stated on the warrant. Det. Dalrymple did not dispute this. Second, the property description

---

[5] Det. Dalrymple testified that it was his understanding that Wagoner lived in the mobile home that was searched. However, when asked, he admitted that he did not know which building was actually Wagoner's residence.

incorrectly describes the mobile home as beige in color. Det. Dalrymple acknowledged this. Similarly, Wagoner claims that the mobile home did not have blue shutters. Det. Dalrymple did not address the color of the shutters. Finally, Wagoner claims the mobile home was not actually his residence. Det. Dalrymple could not testify otherwise. Thus, although the facts are not actually in dispute, the undersigned finds the description was defective in these four ways.

III.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures and provides, in relevant part, that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As a preliminary matter, Wagoner concedes that the "[t]he warrant in issue contains probable cause and is supported by an affidavit." D.E. 12-1 at 2. However, he argues that the warrant "lacks particularity because it specified a different residence than the one actually searched, and thus was a warrantless search." *Id.* The government, on the other hand, argues that the search was valid because there was no concern that another property might be searched by mistake.

The facts of this case are strikingly similar to those that the United States Court of Appeals for the Sixth Circuit addressed in *United States v. Durk*, 149 F.3d 464 (6th Cir. 1998). In that case, the defendant was renting a bedroom in a single-family home located at 4216 Fulton, Royal Oak, Michigan. *See id.* at 464. On one occasion, the defendant's landlord entered his room and observed what she thought were pipe bombs. *Id.* She contacted the local police, and two officers responded. *Id.*

From the hallway outside the room, one of the officers observed pipe bombs and other materials for making explosives inside the room. *Id.* With that information, the officer went to

obtain a search warrant, and he left the other officer at the scene to await his return. *Id.* at 465. Upon the requesting officer's affidavit, a magistrate judge issued a warrant that authorized the search of:

> All rooms, spaces, compartments, hallways and storage areas, including the curtilage of a single family red brick ranch home located at 4612 Fulton in the City of Royal Oak, County of Oakland, State of Michigan. Said dwelling house is located on the north side of Fulton and is approximately 3 houses to the east of Grandview with the numbers 4612 affixed near the front door. Also a metal storage shed behind the home on north side of the main home which is approximately ten feet by fifteen feet, the entrance of which is secured by a plastic tie.

*Id.* The officers executed the warrant, and seized pipe bombs and other evidence. *Id.*

After he was indicted, the defendant in *Durk* "moved to suppress the evidence seized during the search on the ground that the warrant did not describe the place to be searched with the particularity the Fourth Amendment requires and therefore was invalid." *Id.* "More specifically, [the defendant] cited as fatal two errors in the warrant: (1) the transposition of the house numbers from 4216 to 4612, and (2) the description of [the] house as '3 houses to the east of Grandview'-in fact, it was three houses to the west of Grandview." *Id.* Finally, the defendant argued that the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984), did not apply to salvage the warrant. *Durk*, 149 F.3d at 465.

The district court granted the defendant's motion, but upon the government's appeal, the Sixth Circuit reversed. *Id.* Importantly, the Sixth Circuit found that the two descriptive errors in the warrant did not render it invalid. *Id.* In so finding, the court explained the appropriate framework:

> The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort,

>and whether there is any reasonable probability that another premises might be mistakenly searched.

*Id.* (internal citations and quotation marks omitted). Under that test, the Sixth Circuit found that the particularity requirement of the Fourth Amendment was satisfied, notwithstanding the two inaccuracies, because the warrant sufficiently described the location to be searched. *Id.* at 466.

The Sixth Circuit further identified "additional circumstances" that made clear the inaccuracies in the warrant "would not lead to a mistaken search of other premises." *Id.* First, the court noted that the affidavit, which was incorporated into the search warrant, stated that the landlord was the home's occupant and that the defendant was her tenant. *Id.* Second, the court noted that the executing officer was also the affiant and that he had just come from the residence. *Id.* Finally, the court noted that one of the officers remained at the property while the other went to obtain the search warrant. *Id.* Because the Sixth Circuit found that the search warrant complied with the requirements of the Fourth Amendment, it did not reach any arguments concerning whether the good-faith exception applied to the facts of that case. *Id.*

In this case, Wagoner argues that the property description contained four inaccuracies. Specifically, he claims that the double-wide mobile home: did not have the address of 7881 Barbourville Road; was not beige in color; did not have blue shutters; and was not his residence. However, like in *Durk*, none of these inaccuracies render the warrant or search invalid. Instead, "[c]ourts routinely have upheld warrants, such as the one at issue, where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place with particularity." *Id.* (internal quotation marks omitted).

Indeed, although the government concedes that the double-wide might have been 7887 Barbourville Road, that its color was incorrectly described, and that it might not have been Wagoner's residence, the description still provided law enforcement officers with sufficient

7

particularity to identify the property authorized to be searched. *See United States v. Pelayo-Landero*, 285 F.3d 491, 495–98 (6th Cir. 2002) (relying on *Durk* to uphold a search warrant that was challenged as using the incorrect address of a mobile home). Importantly, the Court observes that Det. Darlymple testified that, if an individual follows the directions provided in the search warrant, he or she would arrive at the mobile home that was searched, and Wagoner also acknowledged that the metal outbuilding is at the end of the lane and that the double-wide is to the right of that building.

The additional circumstances identified by the Sixth Circuit in *Durk* are equally applicable to this case. First, the affidavit, which was incorporated into the search warrant, described a controlled buy from Wagoner that had occurred at the "residence" more than a month before the search. *See* D.E. 15-1 at 11; *see also Durk,* 149 F.3d at 466 (citing case law "noting that warrant lacking any physical description of particular apartment is valid if it specifies the name of the occupant of the apartment against which it is directed"). Relatedly, officers had been informed by a confidential informant on the night of the search that Wagoner could be found at the property. D.E. 15-1 at 11. "Second, the executing officer in this case was also the affiant and had just come from [the mobile home]," and other officers remained at that location while Det. Dalrymple "procured the search warrant." *Durk,* 149 F.3d at 466.

Under these circumstances, the Court easily finds that "no reasonable probability existed that the officers would search the wrong premises as a result of the inaccuracies in the warrant." *Id.* Thus, the undersigned recommends that District Judge Wier find "that the description of the premises to be searched was sufficient to validate the warrant and the resulting search and the resulting search and seizure." *Id.*; *see also Pelayo-Landero*, 285 F.3d at 497 ("Relying on *Durk,* the Magistrate correctly held that the description was sufficiently particular and accurate and that

there was virtually no chance that the wrong premises would be searched pursuant to this search warrant"). Finally, like the Sixth Circuit observed in *Durk*, because the search warrant complied with the requirements of the Fourth Amendment, there is no need to reach any issue concerning whether law enforcement officers acted in good faith. *Durk,* 149 F.3d at 466.

IV.

For the foregoing reasons, the Court hereby **RECOMMENDS** that Wagoner's motion to suppress (D.E. 12) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 1st day of February, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge